UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ELL SHEHEE,<br><br>        Plaintiff,<br><br>    v.<br><br>NGUYEN, et al.,<br><br>        Defendants. | Case No.: 1:14-cv-01154-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF No. 74)**<br><br>**FOURTEEN DAY OBJECTIONS DEADLINE** |

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. The case proceeds on Plaintiff's third amended complaint against Defendants Audrey king, April Leavens, Long Moua, and Kim Nguyen for denying Plaintiff a cane and access to educational services in violation of the Americans with Disabilities Act ("ADA") and the Eighth Amendment of the United States Constitution. (ECF No. 34.)

1

Plaintiff is currently detained in the Fresno County Jail (ECF No. 13) but complains of acts that occurred at Department of State Hospitals - Coalinga ("DSH-C") in Coalinga, California. On July 31, 2017, Defendants filed a motion for summary judgment. (ECF No. 74.) On August 7, 2017, Plaintiff filed a "Notice of Eye Surgery" August 3, 2017. (ECF No. 75.) On August 23, 2017, Plaintiff filed an opposition to the motion for summary judgment. (ECF No. 76.) Despite the opposition being filed beyond the fourteen day deadline, the Court accepts it as timely in light of Plaintiff's notice of eye surgery (ECF No. 75) (interpreted here as a motion for extension of time).. On August 29, 2017, Defendants filed a reply memorandum. (ECF No. 78.)

The motion for summary judgment is deemed submitted, and, for the reasons outlined below, the Court recommends that it be granted and judgment be entered in favor of Defendants.

### I. Plaintiff's Miscellaneous Filings

Before and after the motion for summary judgment was filed, Plaintiff filed multiple motions alleging that officials at Fresno County Jail -- where he is currently detained -- confiscated legal documents from him. Because Plaintiff's opposition to the motion for summary judgment (ECF No. 75) focuses extensively (and ill advisedly) on these allegations, the Court will outline the various motions and the orders issued in response to the:

On March 15, 2017, Plaintiff filed a notice that various officials had confiscated his legal documents in retaliation for his having filed a lawsuit. (ECF No. 62.) He did not identify the institution these officials were affiliated with, but none were named Defendants in this lawsuit. The Court construed the notice as a motion for injunctive relief, to wit, the return of his legal documents, and denied it because of the absence of personal jurisdiction over the individuals who allegedly confiscated the papers and because the relief sought differed from that requested in the complaint. (ECF No. 68.) Plaintiff was advised he could bring a separate lawsuit to address such claims. (ECF No. 64.)

On October 12, 2017, Plaintiff moved the Court for an order that the Sheriff's department return to him legal documents it had stolen from him. (ECF No. 79.) Plaintiff also asked the Court to re-issue a copy of its scheduling order. (Id.) This motion was interpreted as a request for reconsideration of the above-referenced order (ECF. No 68). The Court determined there was no good cause for reconsideration and so denied the motion. (ECF No. 80.)

Plaintiff's opposition to the motion for summary judgment attempts to re-open and litigate, and focuses almost entirely on, the above-described claims of stolen documents. (ECF No. 76.) It does not address Defendants' statement of undisputed facts or provide any discernable opposition to the motion.(Id.)

Nevertheless, the Court will, as it must, undertake to fairly analyze and address the bases for the motion for summary judgment.

**II.   Facts**

   **A.   Allegations in Third Amended Complaint**

Plaintiff, assertedly blind, alleges that Defendants denied him access to an educational program for the blind and access to a cane. (ECF No. 34.) The District Judge previously assigned to this case found Plaintiff asserted cognizable claims under the ADA and the Eighth Amendment[1]. (ECF No. 35.)

Plaintiff uses a form complaint and numbers his claims as 1 through 4. However, claims 2, 3, and 4 potentially raise several additional causes of action. The Court will below break these claims down into identifiable, distinct causes of action against each Defendant.

---

[1] As the Court explains below, the screening order recognizes Plaintiff's cognizable claims as "Eighth Amendment" claims, but a civil detainee's rights concerning prison conditions arise under the Fourteenth Amendment. However, for medical claims such as this, the same legal standard is used for detainee Fourteenth Amendment claims and prisoner Eighth Amendment claims for deliberate indifference to serious medical needs. (See infra at 10-11.) Accordingly, the Court's labeling of these as Eighth Amendment claims does not have substantive impact. The Court will continue to refer to these as Eighth Amendment claims, since it is that legal standard that underlies Plaintiff's claim.

Plaintiff's allegations are summarized as follows:

### 1. Defendant Nguyen

Under the heading of Claim 1, Plaintiff alleges that the National Federation for the Blind ("NFB") has books and braille classes on tape, but requires a physician certification of the patient's disability to obtain them. (Id. at 4.) Plaintiff alleges he meets the requirements for the program, but that Defendant Nguyen, his primary care physician, refused on three separate occasions (March 11, 2014, March 20, 2014, and April 25, 2014) to sign the form and thereby deprived him of rights under the ADA. (Id. at 4-6.)

### 2. Defendant Leavens

Under the heading of Claim 2, Plaintiff alleges that Defendant Leavens, the ADA Coordinator at DSH-C, violated his rights under the ADA and the Eighth Amendment as follows (Id. at 6-8):

#### a. NFB Program Claim

By denying him access to the "Educational Public Entity's Service Program" (apparently, the NFB braille program) in violation of Plaintiff's rights under the ADA.

#### b. Access to Cane Claim

By violating the Eighth Amendment by denying Plaintiff's request for a cane, causing Plaintiff to injure himself by walking into a door frame.

#### c. Braille Program Claim

By violating Plaintiffs ADA rights by denying him the braille reading program and denying him help from staff members to get around the prison.

### 3. Defendant Moua

Under the heading of Claim 3, Plaintiff alleges that Defendant Moua, who succeeded Defendant Leavens as ADA Coordinator, violated his rights under the ADA and the Eighth Amendment (Id. at 9-10) as follows:

#### a. NFB Program Claim

By denying him access to the "Public Benefits Services" and "Public Entity Education Program" (apparently, the NFB braille program) in violation of his rights under

the ADA.

### b. Access to Cane Claim

By denying, in violation of the Eighth Amendment, Plaintiff's request for a cane, causing Plaintiff to injure his shins and upper body walking into a door frame on July 15, 2014.

### 4. Defendant King

Under the heading of Claim 4, Plaintiff alleges that Defendant King, Executive Director of DSH-C, violated Plaintiff's rights under the Eighth Amendment and the ADA (Id. at 11) in the following manner:

### a. NFB Program Claim

By not investigating Defendant Nguyen's refusal to confirm Plaintiff's disability, he denied Plaintiff enrollment in the "Public Entity Benefits Educational Program for the Blind" (apparently, the NFB braille program) and thereby deprived him of rights under the ADA.

### b. Access to Cane Claim

By denying him access to a cane and thereby causing unnecessary pain and suffering in violation of the Eighth Amendment. (Id. at 12.)

## B. Statement of Undisputed Facts

Local Rule 260(b) requires that "any party opposing a motion for summary judgment . . . reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relief on in support of that denial."

Plaintiff does not address Defendants' Statement of Undisputed facts or present his own statement of undisputed facts. For these reasons, Defendants' facts will be deemed undisputed, except where a fact is brought into dispute by facts presented in Plaintiff's verified third amended complaint (ECF No. 34) and sworn opposition (ECF No.

76). See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

Unless otherwise indicated, the following facts are found to be undisputed:

From 2013 to February 9, 2015, Plaintiff was a civil detainee at DSH-C. (ECF No. 74-4 at 37, 87.) Plaintiff is legally blind in one eye and, while at DSH-C, he was afforded use of a wheelchair for safety during transport. (Id. at 6.) Plaintiff's ADA file indicates that he required relatively level terrain and unobstructed paths of travel. (Id.) However, the ADA file and Plaintiff's medical records at DSH-C reflect that he was able to move around DSH-C without the use of a cane. (Id. at 4-87.) DSH-C provided Plaintiff with staff members to assist him. (Id. at 88-119.)

The medical records and ADA file do not reflect that Plaintiff requested use of a cane or ever had a cane recommended to him. (Id. at 4-119.) There is no reported incident where Plaintiff walked into a wall or a door. (Id.)

### 1. Defendant Leavens

From April 2009 to August 2015, Defendant Leavens was employed at DSH-C. (Id. at 1.) She was the DSH-C ADA Coordinator from April 2010 through April 2013. (Id.) As ADA Coordinator, she monitored hospital compliance with ADA policies and standards. (Id. at 1-2.) She was responsible for coordinating, developing, tracking, and providing ADA training to hospital staff. (Id. at 2.) Additionally, as ADA Coordinator, Defendant Leavens assisted in the routine monitoring of the patient complaint process to identify problems associated with timeliness, screening decisions, and appropriate response to complaints related to ADA issues. (Id.) Defendant Leavens avers that Plaintiff never requested that she order him a cane. (Id.) Defendant Leavens also avers that Plaintiff never requested access to a braille program, nor did DSH-C have a braille program of its own while she was ADA Coordinator. (Id.)

### 2. Defendant Moua

Defendant Moua succeeded Defendant Leavens as ADA Coordinator at DSH-C. (ECF Nos. 74-4 at 1; 74-7 at 2.) Defendant Moua avers that Plaintiff never requested a

use of a cane. (ECF No. 74-7 at 2.) According to Defendant Moua, any request for a cane would have been included in the ADA file and in the medical records. (Id.) Defendant Moua never heard of any incident where Plaintiff walked into a door. (Id.) No such incident appears in Plaintiff's medical records. (Id.)

DSH-C did not have a braille program during the time Defendant Moua was ADA Coordinator (April 2013 to December of 2015). (Id.) Plaintiff never asked Defendant Moua about access to a braille program or that a form be signed to enable Plaintiff's enrollment in a program for the blind. (Id. at 3.)

### 3. Defendant Nguyen

From January 2013 to December 2014, Plaintiff was under Defendant Nguyen's care. (ECF No. 74-6 at 1-2.) Defendant Nguyen conducted a subjective examination of Plaintiff's vision using a Snellen chart, the most commonly used eye chart for measuring visual acuity. (Id. at 2.). When Plaintiff arrived at Defendant Nguyen's office, he made good eye contact with Nguyen and was "very aware about the items and their placement in the room." (Id.) When Defendant Nguyen asked Plaintiff to read one of the rows on the Snellen chart, Plaintiff became unable to see anything in the room. (Id.) Defendant Ngyuen also observed Plaintiff on a daily basis and, based thereon, determined that Plaintiff did not need a cane and that Plaintiff had been dishonest about his vision capabilities on the Snellen test. (Id at 2-3.) Furthermore, Plaintiff's medical records indicate that he refused to see an optometrist on July 1, 2013, January 29, 2014, and May 21, 2014. (Id. at 3.)

Defendant Nguyen has no recollection of Plaintiff requesting enrollment in a Public Entity Educational Service for the Blind. (Id.) He does recall being asked to sign a form so that Plaintiff could receive audiobooks. (Id.) Because of the results of his examination and observations and Plaintiff's unwillingness to see an optometrist, Defendant Nguyen felt he did not have the requisite diagnosis. (Id.)

### 4. Defendant King

From April 2012 through December 2016, Defendant King was the Executive

Director of DSH-C. (ECF No. 74-5.) Defendant King avers that Plaintiff did not request a cane from him at any point from 2013 through 2015. (Id. at 2.) Excerpts of medical records provided by Defendant King reflect that Plaintiff was able to move around DSH-C without a cane. (Id. at 2, 5-104.) Defendant King is unaware of any incident where Plaintiff walked into a wall or door. (Id. at 2.) Defendant King did not deny a request from plaintiff to access a braille program. (Id. at 2.) During the period 2013 to 2015, Plaintiff did not file any complaint about denial of a cane or access to a program for the blind. (Id.)

On July 30, 2014, Plaintiff filed a first level inmate complaint about his medical care and vision treatment. It does not complain of the lack of a cane or a program for the blind. (Id.) Defendant King responded to the complaint on August 18, 2014, noting Plaintiff's refusal of several ophthalmological follow-up appointments. (Id. at 2, 105-110.). (Id.) Plaintiff refused to visit the optometrist for vision problems in 2013 and 2014. (Id.)

### 5. National Federation for the Blind

The NFB is a charitable organization, registered as a 501(c)(3). It is not a state or local governmental agency, special purpose district, or an instrumentality of a state or local government. (ECF No. 74-8.)

### III. Legal Standard for Summary Judgment

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Id. at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. See Liberty Lobby, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun, 509 F.3d at 984.

**IV. Discussion**

Defendants move for summary judgment on the following grounds:

(1) Plaintiff cannot meet his burden that Defendants Leavens, Moua, or King were deliberately indifferent to his medical needs because Plaintiff cannot show that Defendants Leavens, Moua, or King denied Plaintiff access to a cane and because there is, in any event, no evidence Plaintiff was injured from the alleged failure to provide a cane;

(2) Defendants Leavens, Moua, and King are entitled to qualified immunity on

9

1     Plaintiff's deliberate indifference claim because there is no clearly established right for
2     someone with Plaintiff's impairment to have a cane in prison;

3         (3)    There is no individual liability under the ADA;

4         (4)    Plaintiff cannot demonstrate violation of the ADA; and

5         (5)    Defendants are entitled to qualified immunity because there is no clearly
6     established right to audiobooks from a third party while civilly detained.

    For the reasons outlined below, Defendants' motion for summary judgment should be granted.

## A. Deliberate Indifference to Serious Medical Needs Claims

### 1. Legal Standard

#### a. Civil Detainee Standard

In its screening order, the Court concluded that Plaintiff has cognizable claims pursuant to the Eighth Amendment (ECF No. 35); however, detainees possess greater constitutional rights than prisoners, and their Constitutional claims arise from the Fourteenth rather than the Eighth Amendment. Stone v. City of San Francisco, 968 F.2d 850, 857 n. 10 (9th Cir. 1992). While a convicted inmate's challenge to the condition of his or her confinement are properly brought under the Eighth Amendment, a Constitutional challenge brought by a civil detainee is properly analyzed under the Fourteenth Amendment. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991) (en banc); Youngberg v. Romeo, 457 U.S. 307, 314-15 (1982).

Nevertheless, the Eighth Amendment generally establishes the minimum standards of care for pretrial detainees and therefore the analysis proceeds under the Eighth Amendment. Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003) (pretrial detainee's claim of medical deliberate indifference is analyzed under the Fourteenth Amendment Due Process Clause rather than under the Eighth Amendment, but same standards apply); Clouthier v. Cty of Contra Costa, 591 F.3d 1232, 1241-44 (9th Cir. 2010) (deliberate indifference standard applies to due process claims that

10

correction facility officials failed to address the medical needs of a pretrial detainee); see also Castro v. County of Los Angeles, 833 F.3d 1060, 1067-71 (9th Cir. 2016) (en banc) (setting forth elements of Fourteenth Amendment failure-to-protect claim by pretrial detainee); West v. Nye County Detention, No. 15- 16913, 2017 WL 1952034, at *1 (9th Cir. May 10, 2017) (finding that under "any applicable standard" plaintiff's medical deliberate indifference claim failed summary judgment).

### b. Eighth Amendment Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104). Serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60.

To prevail on a claim for deliberate indifference to serious medical needs, a prisoner must demonstrate that a prison official "kn[ew] of and disregard[ed] an

11

excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

"The indifference to a prisoner's medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." Lemire, 726 F.3d at 1081-82 (internal citations, punctuation and quotation marks omitted); accord, Cano v. Taylor, 739 F.3d 1214, 1217 (9th Cir. 2014). Moreover, "[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989)).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or

inferences strongly suspected to be true[.]" Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Farmer, 511 U.S. at 842. On the other hand, prison officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

There must be some causal connection between the actions or omissions of each named defendant and the violation at issue. Iqbal, 556 U.S. at 676-77; Lemire, 726 F.3d at 1074-75; Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### 2. Use of a Cane

Plaintiff presents Eighth Amendment claims against Defendants Leavens, Moua, and King for denying him a cane. Such a denial, even if acknowledged, would not constitute deliberate indifference to a serious medical need.

First, Plaintiff has presented no competent evidence that he actually needed a cane. The medical and ADA records, as well as declarations of the primary care physician and ADA staff, aver that Plaintiff does not need a cane and that he is able to move around DSH-C without issue. Plaintiff presents only his personal opinion that he needs a cane to move around the prison. "A difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing

13

Sanchez, 891 F.2d at 242). Plaintiff's bald lay person assertions of needing a cane cannot rise to the level of deliberate indifference to medical needs.

Second, while Plaintiff's vison problems may constitute a serious medical need, he cannot demonstrate harm resulting from this alleged deprivation. Plaintiff must demonstrate that Defendants' deliberate indifference caused harm. Jett, 439 F.3d at 1096. While this harm need not be substantial, see McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), the harm must be more than de minimis, see Hudson v. McMillian, 503 U.S. 1, 17 (1992) ("de minimis or nonmeasurable pain is not actionable under the Eighth Amendment").

Plaintiff alleges only that because he did not have a cane to guide him, he ran into a wall and a door frame, causing "injuries." (ECF No. 34.) Plaintiff does not specify the injuries other than to say they were to his shins and upper body. However, no medical treatment was necessary according to Plaintiff's medical records. (See ECF No. 74-4 at 4-119.) Plaintiff's primary care physician, the two ADA Coordinators and the Executive Director of DSH-C aver that Plaintiff did not suffer any noticeable injury as a result of running into an object while he was held at DSH-C. (See ECF Nos. 74-4; 74-5; 74-6; 74-7.) From the records and witnesses, Plaintiff's "injuries" appear to have been de minimis harm, and Plaintiff presents no competent evidence of anything to the contrary.

Even if the Court determined that the "injuries" here, if any, were more than de minimis, Plaintiff has not presented evidence to create a genuine issue of material fact. "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). Stated differently, "[i]n order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in its favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Liberty Lobby, Inc., 477 U.S. at 257). "A non-movant's bald assertions or a mere scintilla of evidence in

14

his favor are both insufficient to withstand summary judgment." Id. (citing Galen v. Cty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007)); see also Soremekun, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." (citations omitted)); F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1170 (9th Cir. 1997) ("Once the [moving party] has made a prima facie case for summary judgment, the [non-moving party] cannot rely on general denials; [they] must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial." (citing Liberty Lobby, Inc., 477 U.S. at 249–50)).

Defendants met their initial burden of showing that Plaintiff did not suffer harm from not having a cane. The only evidence to the contrary is Plaintiff's broad statement in the third amended complaint that he walked into two objects and suffered "injuries." (ECF No. 34.) Plaintiff's "bald assertion[]" is a "mere scintilla of evidence". Stefanchik, 559 F.3d at 929. Defendants evidence includes statements from Plaintiff's primary care practitioner, the ADA Coordinators at DSH-C, and the Executive Director at DSH-C swearing that Plaintiff never suffered any known injury running into objects. (ECF Nos. 74-4; 74-5; 74-6; 74-7.) Medical records reflect no such injury. (ECF No. 74-4 at 4-119.)

Accordingly, Defendant's motion for summary judgment must be granted concerning Plaintiff's Eighth Amendment claim that he was denied access to a cane.

### B. ADA Claims

#### 1. Legal Standard

"Title II of the ADA . . . prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. "Title II of the ADA . . . appl[ies] to inmates within state prisons." Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th

Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453–56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

### 2. Individual vs. Public Entity Defendants

"'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'" Roundtree v. Adams, 2005 WL 3284405, at *8 (E.D. Cal. Dec.1, 2005) (quoting Thomas v. Nakatani, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Roundtree, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)). Public entity, "'as it is defined within the statute, does not include individuals.'" Id. (quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999)).

In short, individual liability is precluded under Title II of the ADA. Plaintiff's ADA claims against these individual defendants are not cognizable.

However, suits against individuals in their official capacities are considered to be suits against the entity for which the officers serve as agents. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Plaintiff did not name a proper institutional Defendant concerning the ADA claim. However, even if Plaintiff intended a claim against DSH-C as an entity and properly named it, his claim could not survive summary judgment for the following reasons.

### 3. Denial of Access to NFB Claims

Plaintiff claims that he was denied services of the NFB which purportedly provides audiobooks and braille reading programs. (ECF No. 34.) Title II is concerned, however, only with exclusion "from participation in or otherwise discriminated against with regard

to a **public entity's** services, programs, or activities[.]" Lovell, 303 F.3d at 1052 (emphasis supplied).

While state prisons are subject to the ADA and may not deprive a prisoner of services because of his disability, the services deprived must be those of a prison or the prison system. Id. The statute specifically states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "[A]n educational program is a program, and when it is provided by and in a state prison it is a program of a public entity." Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997).

Plaintiff has made no showing that there was an NFB program **provided by** the state prison or any other public entity.

The NFB is not a public entity. It is a charitable organization, registered as a 501(c)(3). (ECF No. 74-8.) It is not a state or local governmental agency, special purpose district, or an instrumentality of a state or local government. (ECF No. 74-8.) Thus, the services provided by NFB are not services of a public entity to which Plaintiff has a right of access.

Plaintiff's purported claim that DSH-C deprived him of services to which he has a right under the ADA cannot withstand summary judgement.

### 4. Prison Braille Program and Prison Assistance Claim

Plaintiff alleges that Defendant Leavens violated his rights under the ADA by not providing a braille reading program for the blind and denying him assistance of staff members to get around the prison. (ECF No. 34 at 8.)

Title II requires that one be "excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities[.]" Lovell, 303 F.3d at 1052. DSH-C does not provide a braille reading program. (ECF No. 74-4 at 2.) Plaintiff cannot complain under the ADA of being excluded from participation in a service or program that does not exist.

17

1         Finally, Plaintiff claims that the prison offered "no staff to help me get around". (ECF No. 34 at 8.) He provides no context, much less evidence, as to when he sought such help, from whom it was sought, the nature of the help requested, or why he sought it. There is nothing before the Court to support a claim that any of the named Defendants received such a request and unreasonably failed to grant it. The evidence is to the contrary. Plaintiff's medical records reflect that DSH-C provided Plaintiff with staff members to assist him. (ECF No. 74-4 at 88-119.) He was provided with a wheelchair for safe transport outside of the prison. (Id. at 6.) Defendants confirm that Plaintiff was provided staff assistance for his vision problems as well. (See ECF Nos. 74-4; 74-5; 74-6; 74-7.)

        "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" Soremekun, 509 F.3d at 984 (quoting Liberty Lobby, Inc., 477 U.S. at 250). Plaintiff's "bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." Id. (citing Galen, 477 F.3d at 658.

        Defendants met the initial burden of showing that Plaintiff was provided with assistance to get around DSH-C. Plaintiff's seven-word sentence that staff did not assist him is insufficient to create a genuine issue of material fact.

## V.    Conclusions and Recommendations

        For the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 74) be GRANTED and that judgment be entered in favor of Defendants. The Clerk of Court should be directed to the close the case and deny all pending motions as moot.

        These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: February 6, 2018         /s/ *Michael J. Seng*
                                UNITED STATES MAGISTRATE JUDGE